**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARMEN HAGWOOD<br>3927 Eve Drive East<br>Jacksonville, FL 32246 | : | CIVIL ACTION – LAW<br>NO.: |
| Plaintiff, | : | |
| vs. | : | *Electronically Filed* |
| SOLARIS HEALTH HOLDINGS, LLC<br>2101 West Commercial Boulevard<br>Suite 3500<br>Fort Lauderdale, FL 33309 | : | JURY TRIAL OF 12 DEMANDED |
| Defendant. | : | |

**COMPLAINT**

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 as the action arises under Title VII, 42 U.S.C. §2000e, *et seq*. and 42 U.S.C. §1981, as well as under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq*.

2. Plaintiff Carmen Hagwood's EEOC Notice of Right to Sue letter was issued July 23, 2026 and is attached as Exhibit A. This Complaint was filed within 90 days of receipt of this Notice. Plaintiff cross-filed this matter under the Pennsylvania Human Relations Act, 43 Pa.C.S. §951, *et seq*., with the Pennsylvania Human Relations Commission and it has not been one year since that cross-filing. Plaintiff seeks the Court to deem this action filed when one year has passed. This Court has

supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367 because they are so related to the federal claims that they form part of the same case.

3. Venue is proper in the Eastern District of Pennsylvania because at the time of the incidents in question, Plaintiff Carmen Hagwood lived in Montgomery County, the incidents in question occurred in Montgomery County, and Defendant employed Plaintiff in Montgomery County.

## PARTIES

4. Plaintiff Carmen Hagwood (hereinafter "Plaintiff") is an adult female, currently residing at 3927 Eve Drive East, Jacksonville, FL 32246. At the time of the incidents in question, Plaintiff resided at 627 Summit Street, King of Prussia, PA 19406.

5. Defendant Solaris Health Holdings, LLC (hereinafter "Defendant") is a foreign limited liability company formed in Delaware with its principal office located at 2101 West Commercial Boulevard, Suite 3500, Fort Lauderdale, FL 33309 and a registered office located at Corporation Service Company, 5235 North Front Street, Harrisburg, PA 17110. Defendant employed Plaintiff at 200 East State St. Suite 200 Media, PA 19426.

## FACTUAL ALLEGATIONS

6. Plaintiff Carmen Hagwood's race is African-American and Hispanic, her color is brown, and she is in protected classes because of her race and color.

7. Plaintiff, at the time of termination, was 49 years old (DOB: July 30, 1976) and was thus in a protected class because of her age.

8. Defendant is a vascular practice which has 15 or more employees under Title VII and 20 or more employees under the ADEA.

9. This is a cat's paw case involving a black supervisor who was undermined by white medical assistants in a variety of ways, including false allegations, and was eventually terminated as a result.

10. There is a common pattern of minority medical assistants and workers being forced from this office by trial and false allegations, refusal of the white staff to train, or properly train, minority workers or temps.

11. The Physicians, Management and Human Resources had been made aware that the black employees were being subject to this treatment but did nothing or, if they did anything, did not treat people of different races with anything close to even handedness.

12. Human Resources sided with the white employees and not with employees of color the vast amount of time regarding the allegations, including accepting lies and false narratives of the white employees which was an obvious pattern.

13. While there has been little or no change in the tenure of white medical assistants, there have been multiple firings and resignations of people of color due to

mistreatment by white co-workers, such that there have been no long term black employees in the office.

14. Defendant terminated Plaintiff on February 11, 2026 after Plaintiff's reports of race/color discrimination and her oppositional conduct to race/color discrimination.

15. Plaintiff's termination was discriminatory or retaliatory.

16. Alternatively, and/or additionally, Plaintiff has experienced a hostile work environment because of her age.

17. Alternatively, and/or additionally, Plaintiff has been discriminated against because of her age.

18. Alternatively, Defendant at all times acted against Plaintiff because of her race and color "plus" her age.

19. Alternatively, and/or additionally, Defendant terminated Plaintiff on February 11, 2026 based on age discrimination.

20. Similarly situated managers were treated more favorably and differently, including the white Assistant Manager Natalie Rhodes.

21. Defendant hired Plaintiff as its Practice Manager at its 140 West Germantown Pike, Plymouth Meeting, PA location.

22. Plaintiff has 30 years of healthcare leadership experience, and her annual performance reviews with Defendant were impeccable.

23. Beginning in May of 2025, Plaintiff, as well as other African American employees, began having issues with several medical assistants (Caucasian).

24. Plaintiff began to experience an increasingly hostile work environment while working at Defendant through the time of her termination in February of 2026.

25. Plaintiff was met with daily insubordination and foul language toward her when she would issue routine tasks to certain employees.

26. The four Caucasian medical assistants would call Plaintiff's Caucasian Assistant Manager Natalie Rhodes "boss."

27. In May 2025, Medical Assistant Nicole Bernabo (Caucasian) cursed at Plaintiff in a hallway in front of staff and physicians.

28. There was no intervention by any physician or other staff member.

29. Plaintiff reported this incident as well as other incidents to Human Resource Business Partner Andrea Steber, however Ms. Steber advised no action to be taken.

30. At the same time, Plaintiff was repeatedly reported to Human Resources regarding her daily managerial instructions by several Caucasian employees.

31. In July of 2025, following another incident whereby Nicole Bernabo verbally assaulted Plaintiff in front of staff and physicians, Plaintiff complained to both her manager, Regional Director/Director of Operations Penny Mest, Human Resources, as well as physician David Cahn.

32. At all relevant times, the insubordination, cursing, unwarranted reporting, and false charges were due to Plaintiff's race and those of other minority workers.

33. Lisa Piezwick, who was filling in for Human Resource Business Partner Andrea Steber, stated that there would be no repercussions.

34. Plaintiff's manager, Regional Director Penny Mest, said she would go above Lisa Piezwick and take the issue to Director of HR Suzanne Brogan.

35. Director of HR Brogan stated that the outcome would stand as is and that next time they would be held accountable.

36. On numerous occasions, Plaintiff reported to Defendant's representatives that she felt she was being discriminated against. Plaintiff also reported discrimination on behalf of other employees of Defendant.

37. These reports included concerns to HR and other leadership at Defendant regarding certain employees expressing discriminatory comments and attitudes, including the use of the word "n….r" in the office, referring to an interviewee as "another one" (a person of color), reference to "Divorce in Black" followed with insertion of "What about divorce in white?"

38. Additionally, Plaintiff is aware that other employees reported to Defendant a pattern of employees of color being subjected to false accusations and disciplined without investigation, as well as a hostile work environment.

39. In approximately August of 2025 Plaintiff contacted Human Resources after Plaintiff had been "questioned" by Human Resource Business Partner Andrea Steber after HR had received several complaints from staff regarding Plaintiff's daily work duties.

40. Plaintiff expressed to Human Resources in August of 2025 that she was experiencing unfair treatment in the workplace.

41. In or around September of 2025, Plaintiff was dealing with constant complaints, hostility and insubordination.

42. Plaintiff, extremely upset to the point of crying at times, contacted HR Business Partner Andrea Steber almost on a daily basis and explained how demoralized she felt.

43. Plaintiff told Ms. Steber that in her 25-30 years working in healthcare, she had never experienced the level of disrespect, hostility and disregard that she was experiencing.

44. In or around September of 2025, Plaintiff was written up for telling the staff, specifically the medical assistants, that they were standing around and not doing anything.

45. On the write-up it stated that Plaintiff needed to address each employee individually.

46. In approximately October 2025, an African American employee was late to work.

47. Assistant Manager Natalie Rhodes reprimanded her with a hostile tone, "You're late; you can't be late".

48. The African American was visibly shaken and stated to Plaintiff, "If I was one of the white girls she never would have talked to me like that."

49. Plaintiff agreed with that statement as Assistant Manager Rhodes would decline interviewing black interviewees and she visibly treated African American/black employees differently.

50. Plaintiff attempted to speak with Assistant Manager Rhodes about the manner in which she confronted the African American employee, however AM Rhodes began yelling that she was not racist.

51. Plaintiff was reported for discussing race-related interactions with AM Rhodes and ended up getting disciplined because she discussed this with Ms. Rhodes while Plaintiff's door was open.

52. No investigation nor any discipline was taken toward Ms. Rhodes.

53. Plaintiff reported to Human Resource Business Partner Steber her observations of racism directed towards her as well as towards other employees.

54. Plaintiff was told by Ms. Steber that racism is not a feeling.

55. In or around November of 2025, Plaintiff discussed with Dr. Cahn what Plaintiff believed to be racist behavior in the workplace.

56. Dr. Cahn agreed with Plaintiff and responded to Plaintiff, "That's how the girls are in Delco."

57. Plaintiff took this to mean "white girls."

58. Plaintiff reported this conversation with Dr. Cahn to her manager, Regional Director Penny Mest.

59. In early January 2026, Plaintiff, extremely upset, contacted Penny Mest.

60. During this conversation, Plaintiff expressed the same concerns to her regarding the treatment she had been experiencing, how it was affecting Plaintiff, and her belief that she was being subjected to unfair and disrespectful treatment.

61. Following another incident whereby Nicole Bernabo cursed at Plaintiff, Plaintiff attempted to write up Ms. Bernabo for this incident.

62. Ms. Bernabo went to the physicians and denied cursing at Plaintiff.

63. Dr. Cahn told Plaintiff to "back off" because he did not want Ms. Bernabo to quit and that he "couldn't survive without her."

64. In approximately mid to late January 2026, there was another incident involving Nicole Bernabo cursing and screaming at Plaintiff.

65. The medical assistants and physicians were present in the hallway and side offices.

66. Ms. Bernabo again used the F… word, told Plaintiff to "f… off", and then stated that she couldn't wait for Plaintiff to get her "ass out of here".

67. Multiple employees were again witness to Ms. Bernabo's outburst.

68. Plaintiff wrote her up and gave her a final warning. Ms. Bernabo refused to sign.

69. Plaintiff spoke with HR Business Partner Andrea Steber about giving Ms. Bernabo a final warning and Ms. Steber said that was fine.

70. When Plaintiff discussed this with Dr. Cahn, she told him that she was no longer going to tolerate the insubordination from Ms. Bernabo, that Ms. Bernabo was enabling other employees in the office to treat and speak to her in the same manner, and that she was going to write up Ms. Bernabo.

71. Dr. Cahn agreed with Plaintiff.

72. On February 3, 2026, when Plaintiff came into Dr. Cahn's office, he informed her that several MAs accused Plaintiff of cursing at them.

73. When Plaintiff asked when this allegedly occurred, Dr. Cahn told her that morning.

74. Plaintiff immediately denied cursing at the medical assistants.

75. Dr. Cahn said to Plaintiff as she was walking out of his office that he was tired of it and that he would no longer have Plaintiff's back.

76. Plaintiff immediately emailed Human Resources denying the allegation.

77. Plaintiff informed HR that her only interaction with the MAs that morning was stating, "Good morning" to which no one responded. She did not engage in any further conversation and specifically did not use any profanity.

78. Plaintiff requested a formal review of the matter.

79. On February 4, 2026, Plaintiff's managerial duties were removed with no written explanation provided.

80. Plaintiff was then essentially banned to her office.

81. Plaintiff was told by her manager Penny Mest that she could not leave her office and not speak to the employees.

82. This continued until February 11, 2026 when Plaintiff emailed Penny Mest asking why she was banned to her office and could not perform her job duties.

83. Plaintiff's job duties included managing staff and operations.

84. Plaintiff requested immediate clarification regarding her role as her leadership abilities had effectively been diminished to sitting in her office for eight hours a day without clear delineation of her role, authority or involvement in key decision-making processes.

85. On February 11, 2026, Penny Mest asked Plaintiff to meet her at corporate that same day.

86. At this meeting with Penny Mest and Andrea Steber, Plaintiff was informed that she had been accused of calling MAs "f….g bitches" and that she was being terminated.

87. Plaintiff again denied using profanity toward any employee.

88. Two other African American employees, including Ms. Eldridge, vouched that Plaintiff had come in and simply said "Good morning".

89. Defendant dismissed these witnesses' accounts.

90. Plaintiff stated that her termination is discriminatory.

91. Plaintiff asked Andrea Steber what happened with the investigation. Ms. Steber replied that no further information would be given or discussed.

92. Plaintiff stated that what was happening was clear racism and that she had never cursed at the employees during her time working for Defendant.

93. Plaintiff believes that no actual investigation was conducted into any of her previous reports of discrimination nor into the false claims against her which led to her termination.

94. The Caucasian medical assistants, including Nicole Bernabo, harbored racial animus toward Plaintiff and the office's other Black and minority employees, and made their false accusation that Plaintiff cursed at them for the purpose of causing Defendant to remove Plaintiff from her position. The medical assistants knew that, lacking authority to terminate Plaintiff themselves, a fabricated misconduct complaint reported to the physicians and Human Resources was the means by which Plaintiff would be removed.

95. Nicole Bernabo and the other Caucasian medical assistants engaged in conduct materially more serious than the conduct of which Plaintiff was falsely accused: they repeatedly cursed at Plaintiff, used profanity and insubordination in front of staff and physicians, and refused to perform assigned tasks. Despite Plaintiff's documented reports, Defendant imposed no meaningful discipline on these Caucasian employees. Plaintiff, by contrast, was written up and ultimately terminated

based on a single, unproven accusation of the very conduct the Caucasian assistants committed openly and without consequence.

96. Plaintiff reported the racially hostile conduct to Defendant on numerous specific occasions: to HR Business Partner Andrea Steber in May 2025 (who advised that no action be taken), to Regional Director Penny Mest and Dr. David Cahn in July 2025, to HR's Lisa Piezwick and Director of HR Suzanne Brogan thereafter, and repeatedly through late 2025 and January 2026. In response, Defendant took no remedial action reasonably calculated to end the harassment; Steber told Plaintiff that 'racism is not a feeling,' and Dr. Cahn attributed the conduct to how 'the girls … in Delco' behave.

97. Defendant's exclusion of minority employees followed a consistent method at the office: black/minority employees were subjected to fabricated complaints, denied training that Caucasian employees received, and driven to termination or resignation, while longer-tenured Caucasian medical assistants retained their positions. As a result, the office retained no long-term Black employees and/or Hispanic employees.

98. Plaintiff engaged in protected activity by repeatedly complaining of race and color discrimination against herself and other employees throughout 2025 and into 2026. Following those complaints, Plaintiff's relationship with Defendant's decisionmakers deteriorated in a continuing pattern of antagonism.

99. Defendant's physicians, management, and Human Resources knew, or reasonably should have known, that the medical assistants' accusations against Plaintiff were the product of racial animus, because Plaintiff and others had repeatedly reported that animus to them over the preceding nine months. Defendant nonetheless allowed the medical assistants' fabricated complaint to achieve its intended effect — Plaintiff's termination — without taking any action to investigate or neutralize the discriminatory motive.

100. Defendant's physicians, management and Human Resources officials knew Plaintiffs engaged in oppositional activity (e.g. race/color discrimination).

101. Defendant's physicians, management and Human Resources officials acted negligently under the circumstances.

102. In deciding to terminate Plaintiff, Penny Mest and Andrea Steber relied solely on the medical assistants' uncorroborated accusation. Defendant conducted no independent investigation: it interviewed no disinterested witnesses, gathered no evidence outside the accusing medical assistants' sphere, and identified no basis for the termination apart from their report. When Plaintiff and two Black employees, including Malisha Eldridge, informed Defendant that Plaintiff had said only 'Good morning,' Defendant dismissed those accounts without inquiry and without reasonable inquiry.

103. But for Plaintiff's race and color, the medical assistants would not have fabricated accusations against her, and Defendant would not have credited those

accusations or terminated her. Plaintiff's race and color were the but-for cause of her termination.

104. Black billing employee Malisha Eldridge worked there from May 12, 2025 to August 17, 2026.

105. Ms. Eldridge was present at the time of the alleged incident and confirmed to management/human resources that Plaintiff only said "Good Morning."

106. In the few months after Halloween, 2025, Ms. Eldridge made complaints of discrimination and hostile work environment, the treatment of people "who look like me" to HR contact Person Andrea Steber.

107. Ms. Eldridge noticed she, personally, was being singled out for things she had not been before.

108. Ms. Eldridge personally witnessed the following before Plaintiff was terminated:

a. White MAs, including white medical assistants Amanda and Mary, were trying to convince Ms. Eldridge was unqualified, which Ms. Eldridge thought was untrue based on her observations;

b. Amanda would yell and use profanity on a regular basis and was counseled repeatedly by Plaintiff but management did not support Plaintiff in stopping this behavior;

c. Other white employees observed this and privately commented how bad the behavior was but would not go on record with HR as part of a scheme;

d. There was regular disrespect, eye rolling, and cursing towards Plaintiff by white workers;

e. Numbers of white Medical Assistants (Amanda, Sara, Nicole, Julie, Olivia (sometimes), and Sharon) would meet in Dr. Cahn's office and hold private group meetings in this office without Dr. Cahn's presence and black workers would soon thereafter be picked on for something false or trivial, with Natalie Rhoades (white), the assistant office manager, seeing them meet and doing nothing;

f. Ms. Eldridge noticed that the white medical assistants were making false accusations against black workers and that would they would openly talk about the accusations to get other white workers "on board" with the same story.

109. Ms. Eldridge's office was next to Plaintiff's and she personally observed that management did not interact with Plaintiff the same way after Plaintiff was told "F" you by white employee Nicole and complained.

110. The following minorities left because of a direct result of this treatment: Plaintiff (terminated); Ms. Eridge (black, resignation); Vanessa (black, terminated); Shaneka (black, resignation); Iona (black, terminated; Shakia (black, terminated); a

Hispanic worker (who was not trained and Ms. Eldridge knows only she was no longer there after being ignored for 3 days).

111. In her resignation letter dated August 17, 2026, Ms. Eldridge stated that on numerous occasions she went to Human Resources and told them what was going on in this workplace before Plaintiff was fired.

112. Ms. Eldridge is a contemporaneous witness to the discrimination and resigned from the practice because of the emotional toll the pattern of discrimination had been taking.

113. Ms. Eldridge has worked in the medical industry for decades and never saw treatment permitted to occur to minority employees in the other places she worked and resigned because of the pattern of behavior that was occurring without meaningful change.

114. The Physicians, management, and Human Resources knew or should have known of the medical assistants' racial motivation (it had been reported repeatedly and was obvious) and allowed their fabricated complaint to achieve its intended effect.

115. No genuinely independent investigation occurred of the allegations against Plaintiff, including those that led her to being fired.

116. There is a pattern of no genuinely independent investigation occurring for other black and minority employees.

117. The Physicians, management, and Human Resource officials in this office acted negligently in dealing with race relations as further outlined in this complaint.

118. Plaintiff was treated differently than similarly situated white employees who were accused of similar alleged violations, including Nicole Bernabo who cursed at Plaintiff and used profanity in the workplace.

119. Defendant's physicians, management and human resource officials knew of Plaintiff's protected activity before firing her.

120. Plaintiff reported or engaged in opposition to discrimination for some time as outlined more fully in this Complaint.

121. Plaintiff experienced a hostile work environment and was discriminated against by Defendant, Defendant's managers, human resource personnel and other employees.

122. Defendant's physicians, management and human resource officials acted as cat's paws and were manipulated by discriminatory lower-level white employees into taking adverse action(s) against the Plaintiff.

123. Alternatively, Defendant's physicians, management, and human resource officials discriminated and/or retaliated against Plaintiff.

124. Plaintiff's termination was a result of race and color discrimination and was done with requisite racial/color animus.

125. Plaintiff maintains that Defendant terminated her for a pretextual reason(s) following false accusations and in retaliation for Plaintiff filing racial discrimination complaints with Human Resources.

126. Defendant terminated Plaintiff as a result of race and color discrimination and/or to retaliate against her for protected activity.

127. Plaintiff was retaliated against and terminated by Defendant in retaliation for Plaintiff filing racial discrimination complaints with Human Resources.

128. At all relevant times, the Defendant did not act in good faith and the activity of terminating Plaintiff was done in consultation with second-line supervisors or above.

129. Defendant, through its officers, directors, and managing agents, engaged in intentional discrimination against Plaintiff with malice and/or reckless indifference to Plaintiff's federally protected rights under Title VII and Section 1981.

130. Defendant, through its officers, directors, and managing agents, engaged in intentional discrimination against Plaintiff with **malice** and/or **reckless indifference** to Plaintiff's federally protected rights under the ADEA.

131. Specifically, Defendant's managing agents were fully aware of federal laws prohibiting race, color and age discrimination. Despite this knowledge, they deliberately committed adverse actions against Plaintiff.

132. Defendant's unlawful employment practices were malicious, oppressive, and carried out in bad faith, demonstrating a conscious disregard for Plaintiff's legal protections.

133. At all relevant times, the individuals who committed these discriminatory acts were acting as managerial agents within the scope of their employment, and their malicious or recklessly indifferent conduct is properly imputed to Defendant.

134. Defendant acted with the requisite mental state for punitive damages.

135. As a direct result of Defendant's willful, malicious, and recklessly indifferent state of mind, Plaintiff is entitled to an award of **punitive damages** in an amount to be determined at trial to punish Defendant and deter it and other employers from engaging in similar unlawful conduct in the future.

136. Plaintiff has sustained damages as a result of the conduct herein, including lost wages and **emotional distress, mental anguish, humiliation, embarrassment, anxiety, stress, and a loss of enjoyment of life**.

137. Plaintiff is entitled to reinstatement or front pay.

138. Defendant's activity herein was not done pursuant to good-faith practices in anti-discrimination requiring Kolstad liability.

139. No similarly-situated members of other protected classes were treated in this fashion.

140. Alternatively, Plaintiff was discriminated against and illegally terminated based on discrimination because of her age.

141. Alternatively, Plaintiff was discriminated against because of race and color plus age.

142. Defendant, by and through its agents, managers, employees, and HR officials, many of the foregoing holding positions of authority, violated Plaintiff's rights.

143. Defendant acted willfully and in disregard of Plaintiff's federal rights making it liable for liquidated damages under the ADEA.

144. At the time of her termination, Plaintiff was earning $77,168.00 annually plus a $5,000 end-of-year bonus.

145. Plaintiff has mitigated her damages.

146. Plaintiff's counsel has incurred attorney's fees and costs which are recoverable under Title VII, Section 1981, the PHRA, and the ADEA.

147. Defendant's management and Human Resource officials aided and abetted discrimination by Defendant under the PHRA by the aforesaid conduct.

148. Plaintiff sustained damages as a result of Defendant's conduct, including lost compensation and benefits (including medical benefits, 401K and life insurance contributions, and other benefits) and actual monetary losses, compensatory damages, liquidated damages, attorney's fees, costs and witness fees, and is entitled to equitable relief, including reinstatement, and an additional amount

for the tax consequences for an award in Plaintiff's favor under the Third Circuit's ruling in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009).

149. There is a causal link between the adverse actions and the employment actions herein.

**COUNT I**

**VIOLATION OF TITLE VII – RACE DISCRIMINATION**

**HOSTILE WORK ENVIRONMENT**

150. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

151. Plaintiff is protected under the PHRA because of her race, African-American and Hispanic.

152. Defendant's employees subjected Plaintiff to intentional severe and/or pervasive conduct because of her PHRA-protected category, color.

153. Plaintiff reported the intentional severe and/or pervasive conduct to management and nothing was done.

154. Plaintiff has suffered damages caused by Defendant.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre-

and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement to Plaintiff's former position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by Title VII;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life.

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by supervisors, second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit’s Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant’s conduct violated Title VI;

(l) Production of Plaintiff’s complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT II**

**VIOLATION OF TITLE VII – COLOR DISCRIMINATION**

**HOSTILE WORK ENVIRONMENT**

155. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

156. Plaintiff is protected under the PHRA because of her color, brown.

157. Defendant's employees subjected Plaintiff to intentional severe and/or pervasive conduct because of her PHRA-protected category, color.

158. Plaintiff reported the intentional severe and/or pervasive conduct to management and nothing was done.

159. Plaintiff has suffered damages caused by Defendant.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and

terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by Title VII;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by supervisors, second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Title VII;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT III

## VIOLATION OF TITLE VII – RACE DISCRIMINATION

160. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

161. Plaintiff is in a protected class because of her race, African-American and Hispanic.

162. Plaintiff was qualified for her position.

163. Plaintiff suffered adverse employment action(s) because of her race by Defendant.

164. There is a causal connection between the adverse employment action sustained by Plaintiff and her membership in a protected class.

165. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is

infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney’s fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by Title VII;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by supervisors, second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit’s Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Title VII;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT IV

## VIOLATION OF TITLE VII – COLOR DICRIMINATION

166. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

167. Plaintiff is in a protected class because of color, brown.

168. Plaintiff was qualified for her position.

169. Plaintiff suffered adverse employment action(s) because of her color by Defendant.

170. There is a causal connection between the adverse employment action sustained by Plaintiff and her membership in a protected class.

171. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by Title VII;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by supervisors, second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Title VII;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT V**

**VIOLATION OF TITLE VII – RACE**

**RETALIATION**

172. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

173. Plaintiff is in a protected class because of her race, African-American and Hispanic.

174. Plaintiff suffered adverse employment action(s) because she reported discrimination.

175. Plaintiff suffered adverse employment actions(s) because she opposed discrimination.

176. Plaintiff had a good-faith, reasonable belief that her conduct was protected activity.

177. There is a causal connection between the adverse employment action sustained by Plaintiff and her protected activity herein.

178. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back and front pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by Title VII;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by supervisors, second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit’s Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant’s conduct violated Title VII;

(l) Production of Plaintiff’s complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT VI

## VIOLATION OF TITLE VII – COLOR

## RETALIATION

179. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

180. Plaintiff is in a protected class because of her color, brown.

181. Plaintiff suffered adverse employment action(s) because she reported discrimination.

182. Plaintiff suffered adverse employment actions(s) because she opposed discrimination.

183. Plaintiff had a good-faith, reasonable belief that her conduct was protected activity.

184. There is a causal connection between the adverse employment action sustained by Plaintiff and her protected activity herein.

185. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back and front pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by Title VII;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by supervisors, second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Title VII;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT VII**

**SECTION 1981 – RACE**

**HOSTILE WORK ENVIRONMENT**

186. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

187. Plaintiff is protected under Section 1981 because of her race, African-American and Hispanic.

188. Defendants' employees subjected Plaintiff to intentional severe and/or pervasive conduct because of her Section 1981-protected category, race.

189. Plaintiff reported the intentional severe and/or pervasive conduct to management and nothing was done.

190. Plaintiff has suffered damages caused by Defendant.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre-

and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, as authorized by 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life.

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Section 1981;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT VIII

## SECTION 1981 – COLOR DISCRIMINATION

## HOSTILE WORK ENVIRONMENT

191. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

192. Plaintiff is protected under the Section 1981 because of her color, brown.

193. Defendants' employees subjected Plaintiff to intentional severe and/or pervasive conduct because of her Section 1981-protected category, color.

194. Plaintiff reported the intentional severe and/or pervasive conduct to management and nothing was done.

195. Plaintiff has suffered damages caused by Defendant.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and

terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, as authorized by 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life.

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Section 1981;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT IX

## VIOLATION OF SECTION 1981 – RACE DISCRIMINATION

196. Plaintiff realleges and incorporates the foregoing paragraphs as if set forth herein.

197. Plaintiff is in a protected class because of race, African-American and Hispanic.

198. Plaintiff suffered adverse employment action(s) because of her race by Defendant.

199. There is a causal connection between the adverse employment action sustained by Plaintiff and her membership in a protected class.

200. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, as authorized by 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Section 1981;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT X

## VIOLATION OF SECTION 1981 – COLOR DISCRIMINATION

201. Plaintiff realleges and incorporates the foregoing paragraphs as if set forth herein.

202. Plaintiff is in a protected class because of her color, brown.

203. Plaintiff suffered adverse employment action(s) because of her color by Defendant.

204. There is a causal connection between the adverse employment action sustained by Plaintiff and her membership in a protected class.

205. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, as authorized by 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit’s Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant’s conduct violated Section 1981;

(l) Production of Plaintiff’s complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XI**

**VIOLATION OF SECTION 1981 – RACE**

**RETALIATION**

206. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

207. Plaintiff is in a protected class because of her race, African-American and Hispanic.

208. Plaintiff suffered adverse employment action(s) because she reported discrimination.

209. Plaintiff suffered adverse employment actions(s) because she opposed discrimination.

210. Plaintiff had a good-faith, reasonable belief that her conduct was protected activity.

211. There is a causal connection between the adverse employment action sustained by Plaintiff and her protected activity herein.

212. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, as authorized by 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Section 1981;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XII**

**VIOLATION OF SECTION 1981 – COLOR**

**RETALIATION**

213. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

214. Plaintiff is in a protected class because of her color, brown.

215. Plaintiff suffered adverse employment action(s) because she reported discrimination.

216. Plaintiff suffered adverse employment actions(s) because she opposed discrimination.

217. Plaintiff had a good-faith, reasonable belief that her conduct was protected activity.

218. There is a causal connection between the adverse employment action sustained by Plaintiff and her protected activity herein.

219. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, as authorized by 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Section 1981;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT XIII

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT HOSTILE WORK ENVIRONMENT

220. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

221. Defendant has more than 20 employees.

222. Plaintiff is protected under the ADEA because of her age.

223. Defendant's employees subjected Plaintiff to intentional severe and/or pervasive conduct because of her age.

224. Plaintiff reported the intentional severe and/or pervasive conduct to management and nothing was done.

225. Plaintiff has suffered damages caused by Defendant.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including front wages; back pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre-

and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, and costs of suit, as authorized by the ADEA, together with such other and further relief as this Court deems just and proper;

(e) Liquidated damages in an amount equal to all lost wages and benefits, as authorized by 29 U.S.C. § 626(b), resulting from Defendant's willful violations of the ADEA, which were perpetrated, ratified, or consciously disregarded by Defendant's supervisors, managers, and human resources officials;

(f) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(g) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(h) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(i) A declaration that Defendant's conduct violated the ADEA;

(j) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(k) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(l) Other costs of the action, including taxable costs;

(m) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT XIV

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

## AGE DISCRIMINATION

226. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

227. Defendant has more than 20 employees.

228. Plaintiff is in a protected class because of her age, 49 years old at the time of her termination.

229. Plaintiff was discriminated against or terminated because of her age or was treated differently or disparately by Defendant from similarly-situated younger individuals, including but not limited to, those who are not in a protected age class.

230. Plaintiff suffered adverse employment action(s) by Defendant because of her age, including being terminated.

231. Plaintiff has suffered damages caused by Defendant.

232. Plaintiff is entitled to liquidated damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including

retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, and costs of suit, as authority the ADEA, together with such other and further relief as this Court deems just and proper;

(e) Liquidated damages in an amount equal to all lost wages and benefits, as authorized by 29 U.S.C. § 626(b), resulting from Defendant's willful violations of the ADEA, which were perpetrated, ratified, or consciously disregarded by Defendant's supervisors, managers, and human resources officials;

(f) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(g) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(h) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(i) A declaration that Defendant's conduct violated the ADEA;

(j) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(k) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(l) Other costs of the action, including taxable costs;

(m) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT XV

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

## RETALIATION

233. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

234. Defendant has more than 20 employees.

235. Plaintiff is in a protected class because of her age.

236. Plaintiff suffered adverse employment action(s) because she reported discrimination.

237. Plaintiff suffered adverse employment actions(s) because she opposed discrimination.

238. Plaintiff had a good-faith, reasonable belief that her conduct was protected activity.

239. There is a causal connection between the adverse employment action sustained by Plaintiff and her protected activity herein.

240. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre-

and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, and costs of suit, as authorized by the ADEA, together with such other and further relief as this Court deems just and proper;

(e) Liquidated damages in an amount equal to all lost wages and benefits, as authorized by 29 U.S.C. § 626(b), resulting from Defendant's willful violations of the ADEA, which were perpetrated, ratified, or consciously disregarded by Defendant's supervisors, managers, and human resources officials;

(f) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(g) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(h) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(i) A declaration that Defendant's conduct violated the ADEA;

(j) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(k) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(l) Other costs of the action, including taxable costs;

(m) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT XVI

## PENNSYLVANIA HUMAN RELATIONS ACT

## HOSTILE WORK ENVIRONMENT -RACE

241. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

242. Plaintiff is protected under the PHRA because of her race, African-American and Hispanic.

243. Defendant's employees subjected Plaintiff to intentional severe and/or pervasive conduct because of her PHRA-protected category, color.

244. Plaintiff reported the intentional severe and/or pervasive conduct to management and nothing was done.

245. Plaintiff has suffered damages caused by Defendant.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less

interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XVII**

**PENNSYLVANIA HUMAN RELATIONS ACT**

**<u>HOSTILE WORK ENVIRONMENT - COLOR</u>**

246. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

247. Plaintiff is protected under the PHRA because of her color, brown.

248. Defendants' employees subjected Plaintiff to intentional severe and/or pervasive conduct because of her PHRA-protected category, color.

249. Plaintiff reported the intentional severe and/or pervasive conduct to management and nothing was done.

250. Plaintiff has suffered damages caused by Defendant.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits.

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is

infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney’s fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit’s

Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XVIII**

**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT –**

**RACE DISCRIMINATION**

251. Plaintiff realleges and incorporates the foregoing paragraphs as if set forth herein.

252. Plaintiff is in a protected class because of race, African-American and Hispanic.

253. Plaintiff suffered adverse employment action(s) because of her race by Defendant.

254. There is a causal connection between the adverse employment action sustained by Plaintiff and her membership in a protected class.

255. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components, including a tax-gross up;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT XIX

## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT – COLOR DISCRIMINATION

256. Plaintiff realleges and incorporates the foregoing paragraphs as if set forth herein.

257. Plaintiff is in a protected class because of her color, brown.

258. Plaintiff suffered adverse employment action(s) because of her color by Defendant.

259. There is a causal connection between the adverse employment action sustained by Plaintiff and her membership in a protected class.

260. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including front wages; back pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre-

and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components, including a tax-gross up;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

**(o)** And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XX**

**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT – RACE**

**RETALIATION**

261. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

262. Plaintiff is in a protected class because of her race, African-American and Hispanic.

263. Plaintiff suffered adverse employment action(s) because she reported discrimination.

264. Plaintiff suffered adverse employment actions(s) because she opposed discrimination.

265. Plaintiff had a good-faith, reasonable belief that her conduct was protected activity.

266. There is a causal connection between the adverse employment action sustained by Plaintiff and her protected activity herein.

267. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-

paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT XXI

## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT – COLOR

## RETALIATION

268. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

269. Plaintiff is in a protected class because of her color, brown.

270. Plaintiff suffered adverse employment action(s) because she reported discrimination.

271. Plaintiff suffered adverse employment actions(s) because she opposed discrimination.

272. Plaintiff had a good-faith, reasonable belief that her conduct was protected activity.

273. There is a causal connection between the adverse employment action sustained by Plaintiff and her protected activity herein.

274. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre-

and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT XXII

## PENNSYLVANIA HUMAN RELATIONS ACT

## HOSTILE WORK ENVIRONMENT -AGE

275. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

276. Plaintiff is protected under the PHRA because of her age

277. Defendant's management subjected Plaintiff to intentional severe and/or pervasive conduct because of her PHRA-protected conditions.

278. Plaintiff has suffered damages caused by Defendant.

279. Plaintiff is entitled to liquidated damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including front wages; Back pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and

terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XXIII**

**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT**

**AGE DISCRIMINATION**

280. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

281. Plaintiff is in a protected class because of her age.

282. Plaintiff was discriminated against or terminated because of her age or was treated differently or disparately by Defendant from similarly-situated younger individuals, including but not limited to, those who are not in a protected age class.

283. Plaintiff suffered adverse employment action(s) by Defendant because of her age, including being terminated.

284. Plaintiff has suffered damages caused by Defendant.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including front wages; Back pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is

infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney’s fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit’s

Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XXIV**

**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT - AGE RETALIATION**

285. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

286. Plaintiff is in a protected class because of her age.

287. Plaintiff suffered adverse employment action(s) because she reported discrimination.

288. Plaintiff suffered adverse employment actions(s) because she opposed discrimination.

289. Plaintiff had a good-faith, reasonable belief that her conduct was protected activity.

290. There is a causal connection between the adverse employment action sustained by Plaintiff and her protected activity herein.

291. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including front wages; Back pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is

infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney’s fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit’s

Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

Respectfully submitted,

Date: __October 20, 2026___

BY: _*/s/ Edward C. Sweeney*______

Edward C. Sweeney, Esquire
Attorney for Plaintiff
I.D. No. 64565
Wusinich, Sweeney & Ryan, LLC
102 Pickering Way, Suite 403
Exton, PA 19341
(610) 594-1600
Validation of signature code: ECS1942